NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ANN J. THOMAS,**
*Petitioner*

v.

**DEPARTMENT OF LABOR,**
*Respondent*

---

2017-1191

---

Petition for review of the Merit Systems Protection Board in No. AT-3330-12-0270-B-2.

---

Decided: April 12, 2017

---

ANN J. THOMAS, Atlanta, GA, pro se.

P. DAVIS OLIVER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by JOYCE R. BRANDA, ROBERT E. KIRSCHMAN, JR., STEVEN J. GILLINGHAM.

---

Before WALLACH, CHEN, and STOLL, *Circuit Judges.*

PER CURIAM.

Petitioner Ann J. Thomas appeals the decision of the Merit Systems Protection Board affirming an initial decision denying her request for corrective action under the Veterans Employment Opportunities Act of 1998. Ms. Thomas requested corrective action to challenge the Department of Labor's Employment and Training Administration ("ETA")'s finding that she was unqualified for an advertised job vacancy. We affirm the Board's decision.

## BACKGROUND

Ms. Thomas, a preference-eligible veteran,[1] submitted an application for an advertised job vacancy as a Workforce Development Specialist ("WDS") in the ETA. *Thomas v. Dep't of Labor*, No. AT-3330-12-0270-B-2, 2016 WL 4987003, ¶ 2 (M.S.P.B. Sept. 13, 2016). At the time of her application, Ms. Thomas was an Unemployment Insurance Program Specialist ("UIPS") at the GS-12 level in the ETA, Unemployment Division, in Atlanta, Georgia. *Id.*

The ETA initially found Ms. Thomas ineligible to apply because she failed to submit proof that she was ICTAP eligible, as required for the position.[2] *Id.* After Ms. Thomas filed a complaint with the ETA's Veterans' Employment and Training Service ("VETS") alleging violation of her veterans' preference rights, which was later found to be meritorious, VETS requested that the ETA determine Ms. Thomas's qualifications for the WDS

---

[1]    *See* 5 U.S.C. § 2108 for descriptions of preference-eligible veterans.

[2]    ICTAP refers to the Interagency Career Transition Assistance Plan, a program established by the Office of Personnel Management that gives priority placement to displaced federal workers. *Id.* ¶ 2 n.3.

position and, if it found her to be qualified, to forward her name to the selecting official for consideration. *Id.* ¶ 3. The ETA subsequently informed VETS that it had reviewed Ms. Thomas's application but found her unqualified for the position because she did not have the requisite job experience.

Ms. Thomas appealed the ETA's findings to the Board.[3] *Id.* Following an initial decision and remand to further develop the record, the AJ concluded that the ETA properly assessed Ms. Thomas's qualifications for the WDS position. Specifically, the AJ found that the ETA properly determined that Ms. Thomas was not qualified for the WDS position because she "lacked the specialized experience working with discretionary grants required for the position." *Thomas v. Dep't of Labor*, No. AT-3330-12-0270-B-2, 2016 WL 392898 (M.S.P.B. Jan. 28, 2016) (Resp't's App. 5).

The Board denied Ms. Thomas's petition for review and affirmed the AJ's initial decision. *Id.* ¶ 1. We have jurisdiction under 5 U.S.C. § 7703(b)(1)(A) and 28 U.S.C. § 1295(a)(9).

## DISCUSSION

The scope of our review in an appeal from a decision of the Board is limited. We must affirm a Board decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). "A decision is supported by substantial evidence when 'a reasonable mind might accept [it] as adequate to support a conclusion.'" *Jacobsen*

---

[3] For a discussion of the full procedural history, *see Thomas*, 2016 WL 4987003.

*v. Dep't of Justice*, 500 F.3d 1376, 1379 (Fed. Cir. 2007) (quoting *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984)).

The VEOA was passed to ensure that veterans receive due consideration when they apply for vacant positions available through the merit promotion process. *See generally* Veterans Employment Opportunities Act of 1998, Pub. L. No. 105–339, 112 Stat. 3182 (codified as amended in scattered sections of 2, 3, 5, 10, 28, 31, 38, and 49 U.S.C.). In relevant part, Congress provided that veterans "may not be denied the opportunity to compete for vacant positions for which the agency making the announcement will accept applications from individuals outside its own workforce under merit promotion procedures." 5 U.S.C. § 3304(f)(1) (2012).

Thus, the VEOA gives preference-eligible veterans the opportunity to compete for a vacant position. *Id.* The VEOA, however, "does not enable veterans to be considered for positions for which they are not qualified." *Lazaro v. Dep't of Veterans Affairs*, 666 F.3d 1316, 1319 (Fed. Cir. 2012). We have explained that "[t]he fact that [a preference-eligible veteran] was not selected does not mean that he did not have a full 'opportunity to compete'; it means only that, after such competition, he was not selected." *Joseph v. FTC*, 505 F.3d 1380, 1384 (Fed. Cir. 2007). We have consistently found that the VEOA has not been violated where the preference-eligible veteran was not qualified for the position. *See, e.g.*, *Miller v. Fed. Deposit Ins. Corp.*, 818 F.3d 1357 (Fed. Cir. 2016).

The WDS vacancy announcement at issue contains a section entitled "QUALIFICATIONS REQUIRED," followed by the language below:

Applicants must have 52 weeks of specialized experience equivalent to at least the next lower grade level, GS-12 in the Federal Service.

Specialized experience is experience which is directly related to the line of work of the position to be filled and which has equipped the applicant with the specific knowledge, skills and abilities to successfully perform the duties of the position.

Some examples of specialized experience include:

Providing oversight and guidance to one or more discretionary grantees at the State or local level to help them meet program objects and grant requirements. Providing technical guidance to and coordinating the efforts of workforce development personnel and other subject-matter specialists working on assigned grants/projects. Studying new and proposed legislations and regulations to determine impact on the program. Interpreting program data, developing proposed changes and anticipating the effects and outcome of the program. Using approved review guides to conduct on-site interviews. Presenting discretionary and other ETA grant programs information to a diverse audience including congressional staff, interested citizens, other Federal agencies, etc.

Specialized experience in managing or working with federally funded workforce program grants (i.e. Youth Build, Energy Training Partnership grants, High Growth and Emerging Industries, Pathways out of Poverty, etc.).

Petitioner's Br. and App. 38.

Ms. Thomas argues that the Board erred in finding that the WDS position required experience with discretionary grants because experience with discretionary grants was not explicitly listed on the WDS vacancy announcement. The Board initially agreed with Ms. Thomas that experience with discretionary grants "does not appear to align with the language of the vacancy

announcement." *Thomas v. Dep't of Labor*, No. AT-3330-12-0270-I-1, 2013 WL 9678372, at \*3 (M.S.P.B. May 24, 2013). Specifically, the Board observed that "[t]he criteria listed by the administrator as required for the position are included as examples of specialized experience in the position at issue; however, they are included within a list that begins with the phrase, 'some examples of specialized experience include.'" *Id.* Because of this apparent inconsistency, the Board remanded the case and required that the record be "further developed to enable the Board to determine whether a right to compete violation occurred." *Id.* at \*4.

On remand, the AJ held a hearing and considered testimonies from several witnesses with "extensive experience in the area of human resources and [who] were familiar with the duties of both the [WDS position] and [Ms. Thomas's position] at the time she applied." *Thomas*, 2016 WL 4987003, ¶ 8. For example, one witness familiar with Ms. Thomas's position at the time of her application testified that Ms. Thomas did not have the requisite work experience for the WDS position because the position is the "lead position responsible for training new staff and requires experience working with formula and discretionary grants." Resp't's App. 4. Similarly, another witness responsible for "staffing, recruitment, classification, placement and providing supervisory oversight and instruction to the classification and staffing team" at the ETA also testified that Ms. Thomas lacked the requisite job experience for the WDS position because it required experience with discretionary grants. *Thomas*, 2016 WL 4987003, ¶ 8. The witness had "reviewed the vacancy announcement for [the WDS position] and did an independent evaluation of [Ms. Thomas's] resume, application packet and experience." Resp't's App. 3.

The AJ also considered the sworn Affidavit of ETA's regional administrator of the Atlanta office where Ms. Thomas was employed. The Affidavit explained that the

ETA is "broken up into three main divisions: Office of State Systems ('OSS'), Office of Special Initiatives & Demonstrations ('OSID'), and the Division of Financial, Management & Administrative Services." It further explained that "[e]ach division within the [ETA] covers a different area of expertise and requires different specialized experience." Resp't's App. 17. The Affidavit explained that Ms. Thomas was employed as an UIPS in the OSS, which is "in a different series than the Workforce Development Specialists ('WDS') in the OSID and OSS Divisions." *Id.* Also, the WDS position in question "was for a position within the OSID" at the GS-13 level and "required at least one year of experience at the OS-12 level providing oversight and guidance to Discretionary grantees." *Id.* at 18. Moreover, "[UIPS personnel] do not have the specialized experience required for the GS-13 level in the other divisions like OSID." *Id.* at 18. Finally, the Affidavit explained that "Ms. Thomas does not have the requisite specialized experience to become a GS-13 in the [OSID] because she does not have experience working with the aforementioned grant programs to be qualified to enter into that Division at the GS-13 level." *Id.* at 19.

Based on the above testimony and other submitted evidence, the AJ found that the ETA "properly determined that the appellant was not qualified for the Workforce Development Specialist position because she lacked the specialized experience working with discretionary grants required for the position."

On petition for review, the Board carefully reviewed the AJ's initial decision and agreed with its conclusions. The Board also noted that the ETA "credited [Ms. Thomas] with all of her valuable experience material to the GS-13 Workforce Development Specialist position" and found "that [Ms. Thomas] cannot demonstrate that the agency failed to consider or omitted any of her prior experiences." *Thomas*, 2016 WL 4987003, ¶ 12. Moreover, the Board noted that "[t]he record reflects that the agency dutifully

and thoroughly considered [Ms. Thomas]'s work history" and "there is no evidence in the record that the agency omitted, overlooked, or refused to consider any of [Ms. Thomas]'s grant experience in reaching its conclusion that she was not qualified for the GS-13 Work Development Specialist position." *Id.*

Thus, although the plain language of the job announcement did not explicitly and unmistakably list experience with discretionary grants as a requisite job experience, the Board found, after considering all evidence submitted by the parties and weighing testimonies from the hearing, that the AJ made a proper finding as to Ms. Thomas's qualifications for the job.

We agree. As noted by the Board, the AJ reached its determination despite acknowledging the ambiguity in the plain language of the job announcement, because the entirety of the job announcement supported the finding that the WDS position required experience with discretionary grants, as did the testimonies. *Id.* ¶ 8. On this record, we do not believe that the Board's determination was arbitrary, capricious, an abuse of discretion, or not in accordance with law, and it was supported by substantial evidence. Accordingly, we see no error in the Board's finding.

Ms. Thomas did not dispute, during the hearing or at any time prior to this appeal, that she lacked experience with discretionary grants. *See id.* ¶ 10 ("[I]t is undisputed that [Ms. Thomas] lacked the experience working with discretionary grants . . . ."). On appeal to this Court, however, Ms. Thomas claims for the first time that she had such experience. We may not, however, entertain her new assertion as "we are limited to reviewing decisions of the Board based on the record before the deciding official." *Mueller v. U.S. Postal Serv.*, 76 F.3d 1198, 1201–02 (Fed. Cir. 1996). Similarly, we may not consider her newly submitted evidence that she was recently "found quali-

fied" for "an even higher graded, Supervisory Workforce Development Specialist Position, at the GS-14 level," Pet'r's Br. at 9, 92−93, as this evidence was not part of the record before the AJ.

Ms. Thomas additionally challenges the Board's credibility determinations with respect to the various witnesses from the hearing. We cannot, however, evaluate these credibility findings because "an evaluation of witness credibility is within the discretion of the Board and . . . in general, such evaluations are virtually unreviewable on appeal." *Kahn v. Dep't of Justice*, 618 F.3d 1306, 1313 (Fed. Cir. 2010).

## CONCLUSION

We have considered Ms. Thomas's remaining arguments and find them unconvincing. Because we find that the Board's decision was not arbitrary, capricious, an abuse of discretion, or not in accordance with law, and that it is supported by substantial evidence, we affirm the Board's decision.

## **AFFIRMED**

### COSTS

No costs.